May it please the Court, Philip Gallagher for San Juanito Gallegos Lozano. The issue before the Court is whether the District Court committed reversible plain error in its restitution award against Ms. Lozano in this matter. There are two distinct errors underlying the restitution award which I'll discuss before proceeding to discuss the third and fourth prongs of which the government agrees is that the District Court included in its restitution order losses beyond the time frame alleged in the sole count of conviction, count two, the La Hacienda scheme count. It's clear from the PSR and the sentencing hearing that the District Court included losses from prior to 2005 in its order and in light of Inman and other precedent from this Court that error is plain. The other error is that the District Court also included in its restitution award losses beyond the scheme alleged in that count of conviction, again the La Hacienda scheme. Count one of this case of the indictment alleged a separate conspiracy, the Mission Clinic conspiracy of which both Ms. Lozano and one co-defendant were named parties. In its order, the District Court included losses arising out of both the Mission Clinic scheme of count two as well as the La, I'm sorry, the Mission Clinic scheme of count one and the La Hacienda Clinic scheme of count two, the count of conviction. Let's back up just a minute to count two speaking of the pre-2005 involvement by Lozano. I'm not sure that that, if that's error, that that was really all that plain the way things occurred in the District Court because his pre-2005 involvement was included in the indictment, was it not? The pre-2005 involvement was alleged as count one, yes, Your Honor. All right. Which was not, which there was no conviction upon. Well, but it wasn't, it wasn't involved with count two at all? Count two, the allegation was that that scheme began in 2005 and then continued forward from there. Count one, the allegation was that scheme commenced in 2001 and then continued forward from there. And in its restitution award, the government has a good chart on this in its brief, about $80,000 of the restitution award was based on pre-2005 conduct. Well, but there, I mean, there was, there was pre-2005, there were pre-2005 factual allegations as to, against Lozano, right? Right, in count one, yes, Your Honor. And, and, and the reading of that indictment was, was even, was even waived. And, and so the, the court would have been led to think that there was, that, that, that that involvement was part of the acts that were being charged, it seems to me. I'm, I'm, I'm just suggesting that it wasn't as plain as you, as you may have suggested, even if it was error. Right. And I, and I understand that the count two incorporated the first, it didn't incorporate the count one. These are, there was a series of I think about 40 introductory paragraphs and then there was the count one charge, which is several paragraphs. Count two, the count of conviction incorporated by reference those introductory paragraphs, all the paragraphs prior to count one. And you're right that those allegations included conduct prior to 2005. But, I mean, there was a specific timeframe alleged in that count. And in prior cases, such as both Adams and Mason, the counts of conviction there incorporated other allegations by reference in the, in the actual count of conviction. And in both those cases, this court found that nonetheless, awarding restitution beyond the timeframe specifically alleged in the count of conviction was, well, in Mason it was plain error. In Adams it had been preserved. I mean, in terms of our evaluation of whether it was plain, we put ourselves in some sense in the, in the, in the shoes of the, of the district judge who's sitting there and listening to all of these allegations. And it's not something that was so obvious necessarily that it would have jumped off the page and told the judge that there's no way you can, you can consider these pre-2005 acts. I mean, that, that's sort of the definition of plainness, isn't it? Things don't have to be raised at trial because the judge should figure that out on his own because it's so obvious. Right. But it, again, this, I mean, there were specific allegations in here which were referenced in court and those were explicitly read out loud. She, I mean, she, she waived reading of the incorporated paragraphs in favor of what was, what was actually alleged in count two. And also in the questioning, the court's questioning focused, mentioned La Hacienda repeatedly and hadn't mentioned Mission Clinic at the time of the rearrangement at all. Well, the court, the court did say in open court that the waived paragraphs were referred to in count two and, and, and the court obtained the defendant's assurances that she had read and understood all of that. Correct. But, though, again, those were the introductory paragraphs. The actual crime alleged in count two was a crime that began in 2000, I mean, into which she pleaded guilty. There was a specific date, which I think trumps any unclarity from, you know, vague introductory paragraphs before, not necessarily vague, but in the introductory paragraphs before. I guess, I guess to me that goes more to the, to the first prong than to the second prong. It goes to the prong of whether it was error, but not just whether it was plain. But I think, you know, it was particularly, like I said, in light of Mason, where, again, a court found plain error despite the incorporation of other counts and other conduct beyond the sole offense of conviction. I think Mason shows that just that incorporation here does not render the error unplained, that Inman still controls, as well as Mason. And as I was, was, may I move on, Your Honor? Yeah, sure. Okay. And as I was saying, the other error was what I referenced there, was that including losses related to Mission Clinic, the Count 1 scheme and the Count 2 scheme, Ms. Lozano was, of course, convicted of a count which included as an element a scheme, and so the court has to define that scheme when ordering restitution and can award restitution pursuant to that scheme. But here, there's several reasons it was clear that that scheme to which she pleaded guilty was the La Hacienda scheme, not both the La Hacienda and Mission scheme. First, it was that the court also, in the record, is the restitution order in favor against, I'm sorry, Ms. Puig, who was named in Count 1 of the indictment as a named but unindicted co-conspirator in the Mission Clinic scheme. The court did not include her in its, did not enter against her an award for losses pursuant to the Mission Clinic scheme. It only awarded her the losses for the La Hacienda Clinic scheme, which is the same result that should obtain for Ms. Lozano, about $185,000. Also, the government told... Tell me again why that same result should obtain? Ms. Puig wasn't named in Count 1 of the indictment as a defendant, but she was listed in the offenses as helping, particularly with the billing, as of 2005 with Mission Clinic in the indictment, and the government points out in its brief about Ms. Puig's involvement in the Mission Clinic. So Ms. Puig, like Ms. Lozano, was convicted of Count 2, just the La Hacienda Clinic scheme. Were, if the court intended, if the court viewed all of that as one scheme, then Ms. Puig also should have been, the court would have held Ms. Puig liable. When you say one scheme, you're saying there wasn't a single scheme involving both clinics? Is that what you're saying? Right. I'm saying each count... There was not? Correct, Your Honor. Each count defines a separate scheme. All right. And that's why the court awarded a restitution order against Ms. Puig that did not include losses from Mission Clinic, and that's what should happen here for Ms. Lozano. If she'd been convicted of Count 1, that would have been a different issue, but she wasn't. She was convicted just of the La Hacienda Clinic scheme. And also, it's clear there were two separate schemes. The government told the district court this when it was seeking its And that's, I think, supported by the judge's restitution order, by the government's statement. And then also, there's the different facts between the two. The Mission Clinic started earlier, started in 2001 with Ms. Lombreras and Ms. Lozano. La Hacienda started later, in 2005. They were both focused at different clinics. Ms. Lozano's role in the two schemes was different, and Mission Clinic, the one for which... Well, but there's no question the fraud was committed as regards both clinics. Isn't that correct? Right. And that's... And she was involved with both clinics. Yes. Right. And that's why, I mean, we don't argue... Ms. Lozano made an argument at sentencing about the loss amount as a guidelines matter, and the district court overruled it for precisely the reasons you're suggesting, was that based on relevant conduct under 1B1.1 of the guidelines, she's properly held responsible for sentencing guidelines of losses to both clinics. But the rules for restitution are different, and the rules of restitution are based on the offense of conviction alone. And here, it was just the La Hacienda Clinic of count two. And as I was saying, even though she was involved in both, she did have different roles. She was day-to-day at Mission, working in billing and just there, keeping that clinic occupied. And La Hacienda, she helped set it up and get the paperwork for Mr. Puig set up fraudulently through Dr. Pate, hence the fraud, and then she received payments from that. But her roles were different in these two schemes. And again, as I mentioned briefly before, when the court took Ms. Lozano's guilty plea, it was La Hacienda Clinic that was mentioned by the prosecutor in the district court when assuring that she, you know, through the factual basis in the indictment, the Mission Clinic was not mentioned through the rearrangement proceeding. I think these errors, I think in light of this court's precedent, these errors affected Ms. Lozano's substantial rights. The error as to the timeframe resulted in a loss, in a sufficient difference to show an effect on substantial rights. The difference on the other error in holding her responsible for the Mission Clinic loss as well as La Hacienda loss caused a greater difference. It created a difference in award about $185,000. It doubled essentially the restitution award. And it's clear that but for these errors, the district court would not have imposed an award of the magnitude it did. And then finally, this is a case where the court should exercise its discretion to correct the errors. That's consistent with what this court has done in the past in similar restitution cases. This court has characterized awards of restitution in excess of a statutory maximum, I'm sorry, awards of restitution in excess of the amount authorized as awards in excess of a statutory maximum, and that's the type of error that I think deserves correction. And then finally, the specific facts of Ms. Lozano show that this court should exercise its discretion. As the PSR shows, she is a 58-year-old woman who's caring most days for a disabled mother and she also, and her disabled husband, and she has a disabled daughter who lives with her. Prior to jail, she was earning less than $40,000 a year in the years since this fraud had happened, and there's no reason to think her income is going to be greater later. Leaving this erroneously calculated award of such magnitude in place for a woman in these circumstances, I think, again, is the type of error that deserves correction from this court. All right. Thank you, Mr. Gallagher. You say time for rebuttal. Thank you, Your Honor. Ms. O'Malley. May it please the Court. I'm Terry O'Malley. I represent the United States in this criminal matter. Ms. Lozano has absolutely no evidence that the district court plainly erred in determining the scope of the scheme that underlayed, I suppose I should say, her offense. The scheme that was the element of her offense is something that she actually admitted to. She admitted to it when she pled to the indictment. She admitted to it at sentencing. When she pled to the indictment, as Your Honor, Judge Smith noted, she waived the reading not just of the incorporated elements. She waived the reading of the overt acts. And within the overt acts were references to the scheme at mission, not just to La Hacienda. Well, she argued then at the sentencing that it was just the mission. Yes, Your Honor, she did, which is— It's a little hard now to say that you shouldn't include mission. Yes, Your Honor, and that is exactly the point that she made at sentencing when the judge questioned her, did you actually—were you actually part of a scheme? And she said, well, yes, I was. I was part of a scheme. Did you actually commit fraudulent billings to Medicare and Medicaid? Well, yes, Your Honor, I did do that. But I was not at all involved with the Puig's and with the La Hacienda scheme. And it was her clear point at sentencing to have all of the losses for her sentence, for her prison sentence, to be based on mission. And she never denied any of the pre-2005 conduct, did she, after the waiver of the paragraphs and after the court had made sure that she understood what was going on? No, Your Honor, she didn't. She did not. How was that plain? Your Honor, the only reason that the government conceded plain error in the temporal scope of the restitution is because the factual basis that she agreed to when she entered her plea did limit the scope to that period of time. You realize, of course, that we're not bound by whether you concede or not. Yes, Your Honor, I do. You still have to determine that all four prongs are satisfied, and I'm having trouble. So help us out. How was it, assuming there was error as to the temporal scope, how was it plain given the record? How was it plain to Chief Judge Hinojosa sitting there and listening to all that was going on, so plain to him that, again, in my words, it should have jumped off the page that he was making this terrible error and should never have sentenced the way that he did? Your Honor, as I said, the only way that it was plain, the only thing that was clear in the record as to the temporal scope was when the prosecutor was reciting the factual basis, and the prosecutor began with, from April 30, 2005 to approximately January 10, I believe, of 2006, this scheme occurred. Now, if Your Honor will continue through the factual basis, it will be very clear that there was no limitation to the La Hacienda Clinic. However, there was that limitation to the time span, and that time span is what the government is looking at here. But what about the portions that she waived the reading of the other portions that included the additional temporal scope? Yes, Your Honor, she did. And this was not an easy concession for the government in light of that. There was the case law, as Mr. Gallagher has pointed out, regarding temporal scope that has been fairly well defined. And one of the things that really came through is that when the prosecution in its factual basis, the actual conduct that the defendant is agreeing to does limit that temporal scope in that way, then that is something that does limit the scheme. Now, in this case, I don't believe that it has reached the point of third and fourth prong. In fact, in general, I think that this case is an excellent example for why Austin should not be read too broadly. Well, now you're confusing me because the final sentence of your brief says, this court should affirm the judgment of conviction but vacate and remand the restitution order. Now, if it doesn't meet prongs three and four, then there's no way we can vacate and remand any part of this sentence, is there? No, Your Honor. If that is this court's conclusion, then absolutely not. I mean, you've just told us that in the government's view, I'm just trying to repeat what you said, correct me if I'm wrong, it doesn't meet prongs three and four. Your Honor, pursuant to Austin, the restitution that was awarded for the mission scheme prior to April 30, 2005, would result in a restitution award that was in excess of the temporal scope. And in that instant, this court has said in Austin and in other cases as well, that that does meet the third prong, that that does indeed indicate that it is an effect on the defendant's substantial rights. And then in Austin, this court has also said and has continued to say in more recent cases that the third prong presupposes the fourth prong. Now, this is not a case that is in the government's favor. It's not a case that, as I said earlier, that the government wishes this court to take that broadly. Let me stop you there because this court said very plainly two and a half years ago in Escalante Reyes that the fourth prong is never automatic. So even if there were some outlier cases that seemed to think that the fourth prong follows automatically from the third, that can't possibly stand in light of the in-bank majority's ruling in Escalante Reyes, can it? Your Honor, this court has said that it has in other published cases. I am more than happy to discuss, however, especially under the facts of this case, why that is crucial in determining the outcome here because there is no indication here that there even was an effect on Ms. Lozano's substantial rights, certainly not as to the first claim that it's beyond the scheme that was her offense of conviction because had she raised this point before the district court, before any of the counts had been dismissed, had she raised the issue to Judge Hinojosa and said, Your Honor, I did not agree to pay restitution for the full scheme, then Judge Hinojosa would not have been required to dismiss the first count. The only thing that was in the plea agreement, and it was not a written plea agreement, the only thing that was in the plea agreement is the government would move to dismiss those counts, and Judge Hinojosa made it very clear to Ms. Lozano that that was his discretion. So, one, there is no reason to believe that this actually had any effect on her substantial rights. Two, this is certainly a case that makes it very clear why moving directly from the third prong to the fourth prong is really contrary to the entire idea of plain error because this is a case where not only did she admit the material behavior, that is that she personally, herself, fraudulently billed Medicare and Medicaid from the Mission Clinic, not only did she admit that, she also admitted or she also had sat through six days of trial where it was very clear to all involved in court, including Ms. Lozano, that she was going to be found guilty on all counts. For it to be considered contrary to justice, in this case to require her to actually pay restitution for the harm that she caused, for the loss that was caused, would seem to be, well, frankly ridiculous because everyone knows, including her, that she did fraudulently bill Medicare and Medicaid. She did it as an employee for Mission. She did it as part of her job. She personally, I believe, got $110,000 out of it. Ultimately, Your Honor, what the government is asking is that the court vacate only the portion of the judgment that is outside the temporal scope and then exercise its discretion to modify the judgment and order restitution in the amount of $291,186.23 and then affirm the judgment as modified. However... I'm still confused. I thought you first said the third and fourth prongs weren't satisfied. Then I read you from your brief. Now you seem to go back to what you're saying in your brief, that the third and fourth prongs are satisfied. Your Honor, starting from first principle, starting from Escalante Reyes, the government would agree that the third and fourth prongs aren't. However, this court's precedent, Austin, and then in several cases following that, the government did not cite. Some were unpublished. Some, in fact, Your Honor, wrote a very good dissent that I would say probably sets forth the government's opinion on Austin. However, the government is bound by what this court's precedent has said. Well, let me ask you about that for a minute. We're all well aware of our rule of orderliness that we're bound by what a panel says unless it's overruled by the Supreme Court or changing a statute or by the in-bank court. Let's assume that there were panels after Escalante Reyes that did that. The fourth prong, as I understand it, and I'm asking you what the government's view is, I understand the fourth prong as being entirely discretionary for each successive panel such that I can't imagine that we would be bound by a previous panel's exercise of discretion in its case as to how we would exercise discretion in this case. But if I've got it wrong, please tell me. No, Your Honor, I cannot say that you have that wrong. All I can say is from the government's perspective, and this is working within the full system of the Fifth Circuit within the Department of Justice, that it would appear that while Your Honor has it absolutely right as to this court's discretion and this panel's discretion, it has been held in other cases that that discretion is limited in specifically cases of restitution where there has been an award that is in excess of what should have been awarded. Is that a conclusion, of course, that the government is comfortable with? In this case, no, it is not. That would undermine the statement in Escalante Reyes that the fourth prong is never automatic. Yes, Your Honor, it would. Escalante Reyes was in-bank. Yes, Your Honor, it was. However, there is nothing that specifically abrogated Austin and its application to this particular area. If there had been, I would have been happy to argue it until the cows come home. All right. If Your Honors have no further questions, I will cede my time. Thank you, Ms. O'Malley. Mr. Gallagher, you say time for rebuttal. Just on the fourth prong as you were discussing with Ms. O'Malley, Your Honor, as I think you suggested, since Escalante Reyes, I know of at least two published decisions of the Court in which the Court has found reversible plain error in restitution cases similar to this, De Leon and Mason. And then I also brought to the Court's attention an unpublished decision since Escalante Reyes, Bagley, from last year. And I think obviously the Court is right that Escalante Reyes disclaims any hard rules, but the pattern in restitution cases has been, as far as I can tell, uninterrupted, that when the Court has found an effect on substantial rights, it has also found that the fourth prong would be affected to leave the error uncorrected. But putting aside that, as I explained in my initial argument, this is a case where the particular facts support the Court's exercise of discretion anyway because of, in particular, Ms. Lozano's personal situation and her financial conditions. One of the other points the Court was addressing with Ms. O'Malley, and there's no dispute that the District Court was perfectly entitled to conclude that Ms. Lozano had committed, certainly for guidelines purposes, the acts underlying the Mission Clinic scheme, the Count I scheme. The evidence was there and the PSR supported it. And in fact, she essentially admitted it at sentencing, even if she hadn't, regardless of what she had said even before that. That said, actual innocence of the relevant conduct has not been a factor this Court's looked at before when determining whether or not the award of restitution is within the offense of conviction. The Court instead has looked at what was alleged in that count, what was part of the factual basis, not whether the judge would have been entitled to find that the defendant was guilty of that relevant conduct. I've seen no case where that has been a factor in its analysis. I don't think it's warranted under this Court's precedent. And if there are no other questions, I don't have anything further. All right. Thank you, Mr. Gallagher. Thank you, Your Honor. Both of today's cases are under submission.